ELEAZER TAYLOR, plaintiff in error, *vs.* SAMUEL JETER, defendant in error.

1. The father of a minor, born in wedlock, is its natural guardian, and as such is entitled to its custody and management.
2. A grant of letters of guardianship over the person and property of such a minor to the father, by a Court of competent jurisdiction, where they are domiciled, strengthens the claim of the latter when contested beyond that jurisdiction.
3. A judgment or decree divorcing husband and wife, *a vinculo matrimonii*, and giving the custody and education of a· child of the marriage to the wife, does not empower her to appoint a testamentary guardian for that child, the father surviving.
4. A testamentary guardian cannot, by will, transfer the custody of his ward to another.
5. The place of a child's birth is in law its domicil, if it were at the time the domicil of its parents.
6. The domicil of birth of a minor continues until he has obtained a new domicil.
7. A minor is incapable of changing his domicil during minority. Nor can a stranger, without the consent of the minor's father, (if in life,) change it by removing his person.
8. If a minor, without the consent of his father, (still in life,) be removed by a stranger from another State, where he and his father have until such removal been domiciled, to the State of Georgia, his removal is a tort, which the Courts of Georgia will not sanction. Whilst they will, when necessary, interpose for his protection, they will nevertheless recognize the authority over him of the father as natural guardian, unless shown to be an unfit or unsafe custodian. And if the father had been approved as a fit and proper custodian by a Court of the State whence his child had been removed, having competent authority, they would not overthrow his authority except upon a *distinct issue*, and upon the most direct and overwhelming evidence to the contrary.

*Habeas corpus.* Decided by the Hon. E. H. WORRILL, at Chambers, on the 3d of July, 1861.

The question in this case springs out of the following state of facts, to-wit: Samuel Jeter, a man between fifty and sixty years of age, intermarried with Sarah Taylor, a girl seventeen or eighteen years of age, in the spring of 1853. They lived together until the latter part of the year 1858, when a controversy arose between them in relation to the signing of a deed by the wife with her husband, conveying a tract of

land to a son of the husband by a former wife. The wife refusing to sign the deed, was told by her husband to leave, and take her damned child with her. She had a little boy by the name of Oscar T. Jeter, then about five or six years old. She packed up her trunk, and called a servant to carry it out for her, and the husband interposed, saying, "by G—d, no more calling on negroes here, wait upon yourself;" whereupon she carried the trunk into the porch herself. She left the house leading her little boy, and walking down the road toward her father's house. The husband declared to as many as three persons, on different occasions, that the child was not his, that there was not a drop of his blood in the child's veins, that he was incapable of propagating, and that if he was capable, he was absent from home about the time the child was conceived. The wife was proven to be of good character, virtuous, chaste, intelligent and discreet. After the separation the wife filed her bill in equity in the Chancery Court of Chambers county, Alabama, for a divorce and alimony, in which case it was decreed, amongst other things, that a divorce be granted; that the husband deliver up certain property to the wife; and that he also pay her as permanent alimony the sum of $20,000 00.

It was also decreed that the custody and education of the child, Oscar T. Jeter, be given to the wife.

On the 8th of March, 1860, Sarah Jeter executed a will, bequeathing all her property (with some trifling exceptions) to her son, with limitation over, if he should die without issue, and appointed her father, James Taylor, executor of the will, and also declared in the will a wish that he should be appointed guardian of her child until he became of age.

The will was duly proved, after the death of Mrs. Jeter, on the 5th of April, 1860, and James Taylor exercised the duties of said guardianship up to the time of his death.

On the 15th of March, 1860, previous to his death, James Taylor made a will, in which the guardianship of the child, Oscar T. Jeter, was confided to his son, Eleazer Taylor, who was appointed one of the executors of the will, with direction to execute Sarah Jeter's will also.

Taylor *vs.* Jeter.

On the 3d day of December, 1860, Samuel Jeter petitioned the Court of Probate for the county of Chambers, in the State of Alabama, stating that the child was his son, that he resided in said county of Chambers, and had an estate worth $28,000 00, and prayed that he might be appointed guardian of the person and estate of said child.

Daniel Taylor, another uncle of the child, filed objections to the application, which objections were demurred to, and the demurrer sustained.

Daniel Taylor declining to plead over, the prayer of Jeter was granted, and he gave good security and was appointed guardian of the person and estate of the child.

After the death of James Taylor, Eleazer Taylor removed the child to his residence in Marion county, Georgia, and applied for and obtained letters of guardianship over the person of said child, in 1861.

On the 30th of April, 1861, upon application of Samuel Jeter a *habeas corpus* issued directing Eleazer Taylor to bring up the child and show why he detained him.

Upon the hearing of the *habeas corpus*, upon the facts before stated, Judge Worrill awarded the custody of the child to the applicant, Samuel Jeter.

That decision is the error complained of.

B. HILL, for plaintiff in error.

WILEY WILLIAMS, *contra*.

*By the Court*—JENKINS, J., delivering the opinion.

This is a contest between the father and a maternal uncle, of a child under fourteen years of age, (the mother being dead,) for the custody of the child. The case came before the Court on a return to a writ of *habeas corpus*, sued out in Marion county by the father against the uncle. The answer admits the possession, in respondent of the child, and asserts his right to such possession.

The Court below awarded the possession of the child to the

father, (plaintiff in *habeas corpus*,) and the respondent excepted.

The record discloses the facts, that at the birth of the child, Oscar T. Jeter, the subject of litigation, his parents were domicilled in Chambers county, Alabama; that they, with the child, continued to reside in that county and State, until the death of the mother, early in the year 1860, when, or shortly thereafter, (the father then and still residing there,) respondent, who resided and now resides in Marion county, Georgia, without the consent of the father, removed the child to the latter county and State.

The defendant in error, who was the promovant below, rests his claim to the custody of the child,

1. Upon his natural guardianship, the result of paternity.

2. Upon an order and judgment of Court of Probates of Chambers county, State of Alabama, appointing him guardian of the person and property of the child, after the death of the mother, to-wit, in December, 1860.

This evidence unquestionably makes a *prima facie* case for the defendant in error.

1. It were a useless expenditure of time and labor to adduce either argument or authority in support of the general proposition, that the father is the natural guardian of his own minor child, and as such entitled to its custody and management.

2. And again, if that right were in this case imperfect, it received judicial recognition and confirmation in the order and judgment of the Court of Probates of Chambers county, Alabama, (wherein the minor was born and domiciled,) appointing the defendant in error guardian of the person and property of his child. We assume, now, that the domicil of the child was unchanged at the time of this appointment. That proposition will be fully discussed in considering the case made by the plaintiff in error, to which we now proceed.

The plaintiff in error relies for his defence, 1. upon documents drawn from the records of Chambers county, Alabama, viz: 1. A decree in chancery, whereby, at the suit of Sarah Jeter, (the mother,) she was divorced absolutely from Samuel

Jeter, the father, and the custody of the child awarded to her.   2. Her last will and testament, appointing James Taylor, (her father) guardian of Oscar T.; and 3. The last will and testament of said James Taylor, appointing plaintiff in error his guardian.   2. Upon the order and judgment of the Court of Ordinary of Marion county, Georgia, appointing him guardian *of the person* of said Oscar T.   3. How far, then, do the Alabama records avail him to overcome the claim set up by the defendant in error ?   In the absence of the decree in chancery it is not pretended that the mother could, by last will and testament, appoint a guardian for the child, the father surviving her.   Whether or not she could do so, under any circumstances, in Alabama, we need not consider.   In Georgia, there is an enabling statute, authorizing widowed mothers to do so.   It is enough for our purpose that in this case that authority is claimed for the mother, from the decree alone.   What then is the decree, and what its extent and force ?   It is simply *" that the custody and education of the child of the marriage be, and the same is hereby given to the plaintiff,"* (the mother.)   It does not dissolve the relation of parent and child between Samuel and Oscar T. Jeter— does not bastardise the latter.

What the result would have been, had the Court gone farther and attempted, by decree, to separate between father and child as effectually as it had done between husband and wife, to disfranchise the child forever from paternal authority, we need not pause to inquire.   It is enough for our purpose, that no such stringent action seems to have been contemplated ; certainly none such was taken.   The decree of the Court annulled the marriage—put an end to the cohabition of the parents, and consequently to their joint control and nurture of the child of the marriage.   To avoid future contest between them, touching this matter, it awarded to the mother this control and nurture, influenced, doubtless, in no small degree by the consideration, that at the then tender age of the child, nothing could replace a mother's assiduous nurture and plastic government.   Touching the guardianship of the child, the decree settles nothing, except as between the father

and mother under then existing circumstances. The Court wisely left the matter to be dealt with, in the future, under altered circumstances, as the interests of the child, controlled by the law of the land, might require. The mother survived the divorce a short time only, but during the brief interval exercised without let or hindrance, the delegated authority. In anticipation, however, of her demise, she attempted, by testamentary disposition, to devolve the guardianship of her child upon her own father, to the exclusion of his. Whence was the authority to do this derived ? Certainly not from the terms of the decree. Did it then result from the nature of the office ? Is the office of guardian or trustee, appointed by the Chancellor, transmissible by the will of the appointee? We hold that it is not. It is a personal trust, revocable during the life of the appointee, (upon a proper case made,) by the rightful tribunal, and invariably terminating with that life.

In this case, however, there appears to have been no interference by the father, until after the death of the testamentary guardian appointed by the mother, which death occurred soon after her own.

4. The guardian of her testamentary appointment (James Taylor) attempted to devolve the trust, thus irregularly coming to him, upon the plaintiff in error, by like testamentary disposition. Assuming the trust, the plaintiff in error took the child into his custody, and removed him from the State of Alabama to the State of Georgia. Whatever may be said of the validity or invalidity of the first testamentary appointment we hazard nothing in holding the second utterly void.

" A testamentary guardian cannot, by deed or will, transfer the custody of his ward to another." Shelford on Marriage and Divorce, 691, citing Vaugh, 179. Villaseal vs. Mellish, 2 Swanst., 533.

The records adduced, therefore, from the State of Alabama do not sustain the right of the plaintiff in error to the custody of the child.

He must stand or fall upon the letters of guardianship

Taylor *vs.* Jeter.

granted him by the Court of Ordinary of Marion county, in the State of Georgia. It appears by his own showing that he did not obtain the custody in virtue of this appointment, but sought to strengthen it thereby. Was this a valid appointment? It was not an appointment induced by the minor's accession to property lying in that county, or being under the control of that Court. We have no evidence of such occurrence, and moreover it was a guardianship of the person only. How, then did that Court acquire jurisdiction over this minor? It becomes necessary to inquire where his domicil was.

5. The rule of law is "that the place of birth of a person is considered as his domicil, if it is at the time of his birth, the domicil of his parents." Story's Conflict of Laws, section 46. The evidence discloses that Chambers county, Alabama, was the domicil of this child's parents at the time of his birth; that it still continues to be the domicil of his father; and that he actually remained there until a short time prior to this appointment.

6. Another rule of law is, "that the domicil of birth of minors continues until they have obtained a new domicil. Ibid.

7. And still another rule is, "that minors are generally incapable of changing their domicil during their minority, and therefore retain the domicil of their parents." Ibid.

The conclusion is, that this child has not now, nor ever has had, any domicil other than Chambers county, Alabama. He was wrongfully transferred thence to Marion county, Georgia, and as he could not change his domicil, so neither could a stranger by the wrongful removal of his person.

The plaintiff in error stands before the Court in the attitude of one who tortiously seized and abducted a minor, thereby claiming to have given jurisdiction over his person to a Court in Georgia, and then calling upon that Court to exercise that jurisdiction in legalizing the tort. Doubtless he meant kindly, meant well, to the infant, and that may be, if not a justification, a paliation of the act, in a moral point of view, but in law there is for it neither the one nor the other.

Our conclusion is, that at the time of the grant of letters of guardianship to Samuel Jeter, by the Court of Probates of Chambers county, Alabama, there had been no such change of domicil of the child as divested the jurisdiction of that Court, and consequently none which gave jurisdiction to the Court of Ordinary of Marion county, Georgia. And further, that in the absence of both grants of guardianship, the father, as natural guardian, is entitled to the custody of the child.

8. It was earnestly and forcibly urged upon our consideration, in the argument of counsel for the plaintiff in error, that, as appears by the evidence, the defendant in error, though occupying a paternal relation to the child is an unfit person to be entrusted with his control and education, and that Courts, in their discretion, should always refuse to exercise the extraordinary power here invoked in behalf of such an applicant.

That in such cases Courts should always look with an eye single to the interest of the minor, and never commit him to improper or unsafe custody, is freely admitted, but to the appeal made in this case there are sufficient replies:

First. The question of the fitness or unfitness of the applicant to be the custodian and educator of a minor, does not appear to have been made in the Court below. There is no allegation of his unfitness in the respondent's answer to the *habeas corpus*, nor was there any evidence directly to the point. The plaintiff in error, when before the Court below, seemed to consider himself abundantly fortified by the record evidence (before recited) of his rightful guardianship. These reliances we have already shown cannot avail him.

Along with the exemplification of the Chancery proceedings in Alabama came the evidence submitted to the Chancellor. Thus it incidentally appears that there had been a matrimonial quarrel between the parents of the child, ending in the ejection by the husband, from his homestead, of wife and child, and a disowning of the child. Upon this evidence, thus incidentally adduced, and without any allegation of unfitness in the pleadings, the argument of counsel we are now considering is predicated.

Taylor *vs.* Jeter.

Had the respondent to the *habeas corpus* intended to rely upon the ground of unfitness for the office in the applicant, the latter should have been notified of it by a distinct allegation in the answer, and there should have been direct, satisfactory proof adduced to sustain it. The door would then have been opened for the introduction of evidence in rebuttal. As the cause was conducted below, the applicant was warranted in supposing that the respondent intended to rely solely upon record evidence of his own superior claim to the custody of the child.

Secondly. After the decree in chancery, and after the death of the mother, the defendant in error, induced by the consideration that the child had become possessed of considerable estate, applied to the proper tribunal in Alabama for letters of guardianship of the property, as well as the person, of the child. This application was resisted by another maternal uncle, a brother of this plaintiff in error. On demurrer to the *caveat,* the Court overruled it, and gave the caveator the privilege of pleading over, which was declined. The application was granted, bond and security taken, and letters issued. The vicinage wherein was the domicil of the father and the child, was within the jurisdiction of that Court. There the parties were known, evidence of the fitness or unfitness of the father for the guardianship easily attainable, and opposition actually made by one in the interest of the plaintiff in error, related in like manner to the minor. *There* should this contest have been waged—*there only* could it have been waged, but for the lawless removal of the minor. Shall the Courts of Geogria avail themselves of a tort to wrest from those of a sister State a jurisdiction properly appertaining to them? We say not; rather let the subject be remanded to them. The grant of guardianship by the Court of Probates does not, any more than did the decree in chancery, confer upon the appointee a vested title. It simply reposes in him a trust for the benefit of the infant, revocable whenever abused.

We repeat, to the Courts of Alabama properly belongs this jurisdiction, with them is the responsibility, which, we doubt

Taylor *vs.* Jeter.

not, will be well met, and to their keeping we think the Court below very properly remanded this tender victim of a family feud.

Let the judgment be affirmed.