Argued October 11, reversed October 24, petition for rehearing
denied November 20, 1956

## PARKER *v.* KOTTERMAN ET UX

302 P. 2d 717

*Donald S. Kelley,* Roseburg, argued the cause and filed a brief for the appellants.

*Arthur A. Wilson,* Roseburg, argued the cause for respondent. With him on the brief was Fred H. Bernau, Roseburg.

### PER CURIAM.

The petitioner, Betty Parker, brings this proceeding in habeas corpus against her parents, Perry and Dolly

Kotterman, to recover the custody of her ten year old daughter, Dianna Kay Hampton. From an order granting custody to Mrs. Parker, Dianna's grandparents appeal.

■ When the right of a parent to the custody of a child is resisted in a proceeding in habeas corpus upon the ground, as here, that the parent is unfit for the trust, the burden of proof challenging the petitioner's fitness for such custody and control of the child was on the defendant-appellant. *Bryant v. Dukehart,* 106 Or 359, 374, 210 P 454.

In response to this burden, the petitioner's maternal grandmother, mother, father, adult sister and brother, a former husband, and a certain man associated with her in some of her most unsavory activities took the stand and testified to a story of petitioner's transgressions, which in point of time began shortly after the birth of the child and were present in most every year thereafter.

Taken in its entirety, the record presents a picture of maternal neglect and moral indifference especially shocking when measured by all accepted standards of decency. The offending acts of the mother, compelling our conclusions in the Bogh case, hereinafter referred to, were relatively few and mild in comparison to petitioner's wanton ways of life and her virtual abandonment of little Dianna to the care of Mr. and Mrs. Kotterman during that entire time. In addition to the testimony of the others, Dianna took the stand, and in a manner assured and convincing, testified to the solicitous protection and kindly treatment which she had always received from her grandparents. The child also expressed her desire to remain with them instead of her mother. Moreover, nothing appears to warrant a conclusion that the grandparents have not

been, or will not in the future be, faithful to the trust which the custody of the child casts upon them.

■■ In the face of the testimony adduced by the defendants, the mother remained mute and did not offer any evidence in contradiction. Evidently, she rested her claim to the custody of the child solely upon the mistaken belief that admission of the parental relationship existing between them was alone a sufficient warrant for a favorable order. "But, the right of the parent is not a right of property in the child nor an absolute vested right to his custody." *Bryant v. Dukehart,* supra (106 Or 372).

Notwithstanding the record as we find it, the court at the termination of the trial abruptly and in a manner more cavalier than judicial, brushed aside all of the evidence impeaching Mrs. Parker's moral character and fitness as a mother and future custodian for little Dianna, by addressing himself to appellants' counsel, saying, "You rake up and scrape up a lot of ancient matters that don't amount to anything." Almost immediately thereafter he ordered the child released to the custody of the mother.

Even though some of the testimony might be said to be remote, yet the matters referred to indicate that from the time of Dianna's birth, the petitioner maintained a more or less consistent and constant character pattern of easy and frequent departure from the ways of rectitude and maternal interest and obligation. There is not one iota of testimony indicating repentance or reformation on the part of the petitioning mother which might tempt a court to temper a judgment adverse to a contrite petitioner. *Bogh v. Lumbattis,* 203 Or 298, 305, 280 P2d 398.

In *Bryant v. Dukehart,* supra, the plaintiff father by habeas corpus sought to recover the custody of his

minor son, then in the keeping of a sister of the child's deceased mother. During the course of the trial, the father's previous record of immorality, beginning approximately 10 years before the decision in that case and continuing thereafter for sometime during the intervening period, was put in evidence of plaintiff's unfitness. It was described by the court as "the grossest immoral conduct". Against a contention that the testimony of the plaintiff's immoral conduct was so remote that it could have no bearing on his case then pending before the court, Mr. Justice RAND said, at page 375:

"\* \* \* The testimony is remote but it has evidentiary value and there is no testimony offered to show that plaintiff has reformed.

"Under the circumstances disclosed by the testimony, before a court would be entitled to award the custody of this child to him there should be clear and satisfactory proof, not only as to his present moral character, but also that his habits have become so settled that if the child was turned over to him his mode of living would be such as to afford a good example for the child to emulate."

Substantially the same situation prevails here. Instead of a relationship of father and son, we have the relationship of mother and daughter, and a daughter at those tender years when she particularly needs the guidance and understanding of a woman sensitive to and exemplifying the highest and best of standards of motherhood.

Principles controlling our conclusions here will also be found in the recent case of *Bogh v. Lumbattis,* supra. Examination of that case will also reveal a background in many respects like what is here found in the area of maternal instability and irresponsibility.

The order of the trial court is reversed.