Argued April 12, affirmed July 9, rehearing denied July 30, 1929.

IN RE GUARDIANSHIP OF BERTHA MAXINE BALDWIN.

STATE v. C. A. BALDWIN.

(278 Pac. 1078.)

For appellant there was a brief over the name of *Mr. Stanley Myers,* District Attorney, with oral arguments by *Mr. Francis T. Wade,* Deputy District Attorney, and *Mr. Thomas G. Ryan.*

For respondent there was a brief over the name of *Mr. Robert R. Rankin,* with an oral argument by *Mr. Bert S. Gooding.*

BELT, J.—This is an appeal from a decree of the Circuit Court reversing an order of the court of domestic relations for Multnomah County adjudging Bertha Maxine Baldwin, a dependent child and committing her to the Boys' and Girls' Aid Society of Oregon. Upon appeal to the Circuit Court there was a trial *de novo,* but there was no court reporter present and the testimony of the witnesses, as incorporated in the bill of exceptions, is in narrative form. From this record, which is unsatisfactory for the purpose of determining the custody of a child, we glean the following facts: C. A. Baldwin and his wife lived on a small backwoods ranch about nine miles from Knabb, Washington. The road leading to this most humble home was, as said by one witness, "difficult to travel even on foot." A small one-room country school was about a mile distant. On this farm Bertha Maxine was born in March, 1922. Upon the death of the mother in April, 1923, this little girl and her sister, who was about a year older, were taken by the father's sister, Mrs. Hattie Hinson, to her home at Portland, Oregon. They went with the consent of

Baldwin, but, as said by him, "with the express understanding that such custody was to be merely temporary." The Hinson home is in the Irvington residence district and is strictly modern. Mr. Hinson is, and has been for twenty years, a member of the Portland police department. Both children were given good care and treatment and they, no doubt became much attached to Hinson and his wife.

On September 22, 1924, Mr. Hinson wrote a letter to the father requesting him to come and take Wilma, the older girl, as "it is too much work for Hattie (his wife) to care for them both." In compliance with this request, Baldwin went to Portland and demanded that both of the girls be given to him. The Hinsons, however, refused to surrender possession of Bertha Maxine. According to the testimony of Baldwin, he was threatened with violence if he persisted in his efforts to secure the custody of his own daughter. It is plain that ill feeling arose between Mrs. Hinson and her brother concerning the custody of this child.

On March 8, 1928, the court of domestic relations, on petition of Mrs. Hinson, adjudged Bertha Maxine a dependent child and committed her to the Boys' and Girls' Aid Society. It was no doubt the intention of Mrs. Hinson to institute adoption proceedings after such commitment.

■ Was Bertha Maxine a dependent child within the meaning of the statute? Was she "destitute, homeless or abandoned"? If she was not, the natural right of the father to his own child must prevail. This sacred relationship cannot be severed by law unless the welfare of the child urgently demands it. Merely because the child may be given a better home and may be surrounded with more culture and wealth

does not justify a court in depriving a father of the love of his own child: *Mead* v. *Worel,* 113 Wash. 504 (194 Pac. 807).

■ When Baldwin's wife died it was only natural that he should turn to his sister for aid and assistance in caring for his two little girls. Clearly there was no intention to abandon them. To constitute abandonment there must be more than a mere temporary absence or neglect of parental duty: *In re Snowball's Estate,* 156 Cal. 240 (104 Pac. 444). The word "abandon" as defined by Webster, means:

"To relinquish or give up with the intent of never again resuming or claiming one's rights or interest in; to give up absolutely, to forsake entirely, to renounce utterly * *." Webster's New International Dictionary.

Also, see *In re Adams,* 214 Mich. 199 (183 N. W. 241); *In re Cordy,* 169 Cal. 150 (146 Pac. 532).

■ There is not a scintilla of evidence attacking the moral fitness of the father. There is nothing to indicate that Bertha Maxine would be injured by reason of conditions in the home. He is law-abiding and decent, although poor when measured by a mercenary standard. Baldwin married a good woman in April, 1928, and is now in a better position to care for his children. A new home is being constructed near the schoolhouse and we believe the child will receive proper treatment. She will have the company of her older sister and may be just as happy or happier in her country home than she would be were she living in a mansion on Fifth Avenue in New York City. Who knows?

The Hinsons were ready and willing to surrender Wilma. They impliedly conceded that the father is a fit and proper person to have her care and custody.

Why should he not be so considered as to Bertha Maxine?

The decree of the lower court is affirmed.

AFFIRMED. REHEARING DENIED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.