Argued October 16; reversed December 24, 1929

IN RE CUSTODY OF LARCH ADAIR ELLENBURG

CHARLIE ELLENBURG *v.* EDITH AND F. M. WOODSON

(23 Pac. 27)

For appellant there was a brief over the name of *Mr. M. L. Hallmark* with an oral argument by *Mr. Carl E. Wimberly.*

For respondents there was a brief over the names of *Messrs. English & Krause* and *Mr. B. L. Eddy* with an oral argument by *Mr. L. G. English.*

BEAN, J. On December 10, 1924, the circuit court for Douglas county passed a decree granting Audrey F. Ellenburg a divorce from the appellant, Charlie Ellenburg, and awarding to Audrey F. Ellenburg the care and custody of Larch Adair Ellenburg, the minor son of the parties, who was, at that time, two years of age. Thereafter, Audrey F. Ellenburg with Larch

Adair Ellenburg, made her home with Edith Woodson, her sister, in Cottage Grove, Oregon, and later resided with Mrs. Woodson in Harrisburg, Oregon, and still later in Toledo, Oregon, where on the 1st day of January, 1929, Mrs. Ellenburg died.

On the 14th day of January, 1929, appellant filed in the circuit court for Douglas county an application for a modification of the order awarding the custody of the child, so as to grant to him the care and custody of his son, Larch Adair Ellenburg. This application, together with a citation, was served upon Edith Woodson and she appeared and answered, admitting all of said application, except the allegation that the appellant is a fit and proper person to have the care, custody and control of said child. Her amended answer also alleged that the appellant has no love for the child; that his home is not modern; that he is financially unable to support a larger family than he now has, and further alleged that Audrey F. Ellenburg, before her death, requested that Edith Woodson and F. M. Woodson take Larch Adair Ellenburg and raise him in the event she died. Mrs. Woodson alleged that she is ready, able and willing to comply with that request, and in conclusion prayed that she be given the care, custody and control of said child.

A reply having been filed, a trial was had, at the conclusion of which the court made an order and decree denying appellant's application and awarding the custody of Larch Adair Ellenburg to Edith Woodson and her husband F. M. Woodson. This appeal is from that order and decree.

§ 9765, O. L., provides, that in the absence of misconduct, the rights of the parents to the custody of their minor children are equal. In the case of *Barnes*

*v. Long,* 54 Or. 548 (104 P. 296), the custody of the child was given to the mother by a divorce decree. Upon her death the father instituted habeas corpus proceedings to recover the child from the maternal grandmother. In determining the relative rights of the parties in this court, Mr. Justice EAKIN said:

"In the decree of divorce, the custody of the child was given to the wife, and properly so notwithstanding she was the party at fault, such fault not reflecting upon her character, and the child being of tender age. But the law recognizes the father, the mother being dead, as the rightful custodian of his child, as against the claim of all persons. Of course, the court, in the interest of the child, may take it from the parents and make other provisions for it, but there must be some good cause for doing so. No doubt the defendant would give the child a good home and the best of care, and is very much attached to it, but, as against the father, she has no legal claim upon it: *Swarens v. Swarens,* 78 Kan. 682 (97 P. 968). If the father were unworthy or incapable of caring for it properly then it would be the duty of the court to place it elsewhere; but no plea of that character is made here. The divorce suit has not relieved petitioner of his parental obligation to his son, and he has done no act that forfeits his right to its custody."

In *Ex Parte Bryant,* 106 Or. 359 (210 P. 454), the custody of the minor child was awarded to the mother in the divorce proceedings, and upon her death habeas corpus proceedings were instituted by the father to obtain the custody of the child from Sarah Dukehart, who was appointed testamentary guardian by the mother. The opinion of this court on the appeal was written by Mr. Justice RAND. He says, as shown at page 369:

"The mother of the child now being dead, the decree in the divorce suit does not in any way affect

plaintiff's right to have the custody of the child. It merely awarded the custody to the mother, and imposed upon her a personal trust revocable by the court rendering the decree, upon proper showing. This trust has been terminated by her death: *Taylor v. Jeter,* 33 Ga. 195 (81 Am. Decisions 202). As a general rule, upon the death of the parent to whom it awarded the custody of the minor child by a decree divorcing the parents, the other parent becomes entitled to its custody. This is said to be almost a universal rule. * * * As the right of Mrs. Bryant to the custody and control of the child under the powers conferred upon her by the decree, terminated upon her death, the plaintiff, as the father of the child, is vested with the paramount right to its custody, unless * * * by his own acts and misconduct the plaintiff has forfeited his parental rights, * * * and where the right of the father to the custody of his child is resisted upon the ground of his unfitness for the trust or other cause, a proper regard to the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proofs. The rights of the father, on the one hand, and the permanent interest and welfare of the infant, on the other, are both to be regarded, but the right of the father is paramount and should not be disregarded, except for grave cause. The breaking of the tie that binds them to each other can never be justified without the most solid and substantial reasons, established by plain proof. In any form of proceeding the sundering of such ties should always be approached by the courts with great caution and with a deep sense of responsibility. * * * However, it is only in extreme cases of gross misconduct, inability, unfitness, neglect or cruelty upon the part of the parents, that the court would be justified in taking the custody and control of the children from the parents.''

It was there held that the burden of proof to show that the parent is unfit to have the custody of his child is upon the person alleging such unfitness.

The paramount question in this case which reflects the best interest of the child, Larch Adair Ellenburg, is in regard to the fitness and ability of the father to have the care and custody of his child. We turn to the evidence in the case.

Mr. Ellenburg resides at Drain, Douglas county, Oregon. He has married the second wife and has one child by her. Mr. and Mrs. Woodson have a good home and have taken excellent care of the boy, the same as their own child, and are able and willing to continue to do so. Mr. Woodson is a successful automobile dealer.

▪ The dissolution of the bonds of matrimony did not relieve either of the parents of the responsibility for the care, nurture or education of their minor child: *Wells v. Wells-Crawford,* 120 Or. 557, 568 (251 P. 907). The duty of the care of the child by the mother, to whose custody he was awarded by the decree in the divorce suit, has now ended by her death. The mother being no longer alive, the decree in the divorce case does not affect the father's right to have the custody of his child. With the responsibility for the care, nurture and education of Larch Ellenburg, which the law devolves upon the father, is coupled the natural parental and paramount right of the father to the custody of his child, unless such right has been forfeited by the act and misconduct of the father. The record in this case does not show that Charlie Ellenburg, the father, has forfeited his parental right to the care of the boy. It appears from the testimony that Mr. Ellenburg is a man of good moral habits and is an industrious hard-working man, usually earning four or five dollars per day.

Several good citizens of Drain testified to the effect that Ellenburg does not have any bad habits. It

appears he has a comfortable, although humble, home, and is able and anxious to care for and educate his son. The fact that the respondents, Mr. and Mrs. Woodson, would give the child a good home and the best of care, and that they may be much attached to him, would not diminish the legal claim of the father upon his child: *Ex Parte Bryant,* supra.

■ The lamentable circumstances of the disagreement of the parents of the child, resulting in a divorce, have to a large extent been obliterated. Usually it is difficult for any other person, not the parent, to take the place of a child's own parent. Circumstances might change so as to warrant a change of the custody of a child, and the court is clothed with authority to make such change when the conditions relating to the welfare of the child, who is practically a ward of the court, have altered so as to require a modification in the order of custody.

The relatives of the mother of the boy seem inclined to criticize the father, but there is nothing, in our opinion, that shows that he is not a fit and proper person to have the custody of the boy. The Woodsons may have more wealth than Ellenburg, but "riches may take wings and fly away." As stated by Mr. Justice BELT in *In Re Baldwin, Guardianship,* 130 Or. 206 (278 P. 178):

"Merely because the child may be given a better home and may be surrounded by more culture and wealth, does not justify a court in depriving a father of the love of his own child. Citing *Mead v. Worel,* 113 Wn. 504 (194 P. 807)."

For some time, before the hearing in this matter, the boy was with his maternal grandmother at Harrisburg, some 58 miles from Drain, where he was attend-

ing school. It was the intention to take him to Toledo after school was closed. Mr. and Mrs. Woodson were residing on the coast at Toledo and frequently visited Mrs. Woodson's mother and the boy. The school facilities at Drain are good. The climate at Drain, as the testimony indicates, is more congenial to the boy's health, which is delicate, than is the climate on the coast at certain seasons of the year.

■ The prosecution of these proceedings by the father is additional evidence of his love and affection for his boy. The welfare of the child, which is the paramount consideration in cases of this kind, does not require that he be longer kept from the parental care of his father: *Rasmussen v. Rasmussen,* 113 Or. 146, 148 (231 P. 964); *Leon v. Leon,* 79 Or. 347, 349 (155 P. 189). See also *Merges v. Merges,* 94 Or. 246, 253 (186 P. 36).

The consideration of the testimony and the law enunciated in the cases to which we have referred leads us to believe that the decree of the learned trial court should be changed. The custody of Larch Adair Ellenburg should be awarded to his father Charlie Ellenburg; it is so ordered.

Under the prevailing circumstances no costs will be awarded against respondents.

REVERSED.

BELT and BROWN, JJ., absent.