Argued March 25; reversed April 14, 1936

In re Henkle

## HENKLE *v.* PATTERSON et al.

(56 P. (2d) 343)

338

*Oscar Hayter,* of Dallas (R. S. Kreason, of Dallas, on the brief), for appellant.

*H. T. Botts,* of Tillamook, for respondents.

■ BEAN, J. The mother of the minors died on January 4, 1934; the father died on March 19, 1934. At the time of his death Mr. Thomas resided in Dallas, Polk county, where he kept a home for his children and was engaged in the undertaking business in partnership with plaintiff. The relatives of the children agreed that appellant was the one who should be appointed guardian of the children. Mrs. Patterson was aware that it was contemplated Mr. Henkle would be appointed guardian, but made no objection. Defendants state that the expression of the mother and father of the minors, prior to their death, was that they desired and had arranged for the children to live with defendants upon the death of the parents. This would not change the legal status of the minors. Matters of that kind should be presented to the county court making the appointment of the guardian in some proper proceeding. *Barnes v. Long*, 54 Or. 548 (104 P. 296, 25 L. R. A. (N. S.) 172, 21 Ann. Cas. 465). Plaintiff presented a petition to the county court for Polk county showing the desirability of such an appointment and prayed that he be appointed guardian of the minor girls and

have their care, custody and tuition. The county court made a finding that plaintiff was a suitable and competent person to act as guardian of the minors, and, on April 21, 1934, made an order appointing C. W. Henkle as guardian of said minors, to have their custody and tuition and management of their estates, and required a bond of $4,000, which was filed in the matter of the guardianship of Thia Nadine Thomas, and a bond of $2,000, filed in the matter of the guardianship of Sylvia Ann Thomas.

In June, 1934, with the consent of the county court for Polk county, plaintiff arranged for defendants Ora Patterson and Kile Patterson, her husband, to board and lodge the minors, plaintiff to pay them $25 a month for each child. Accordingly the plaintiff delivered the children to defendants under that arrangement. No time for the duration of the arrangement was specified. On July 19, 1935, plaintiff had made plans for the care and schooling of the children, which made it desirable, in his judgment, to have the children taken from the care of defendants. Accordingly on that date he demanded possession of the children. This the defendants refused; hence these proceedings.

In regard to the plaintiff and his wife, the court found as follows:

"That C. W. Henkle and wife have a good home and now offer to keep the minors there except during the school season and are proposing to put the minors into a private school for nine months of the year, but that such an arrangement would not seem to be likely at this time to produce harmony or contentment on the part of the minors, and for that reason it seems inadvisable to require such arrangements to be made and carried out, although the court finds nothing derogatory to the fitness of C. W. Henkle and wife as custo-

dians of the children if conditions of the children were normal in other respects.''

■ A writ of habeas corpus, designed and admirably adapted to secure individual freedom, has come to be applied to other uses, and among them, to the ascertainment and enforcement of the right of custody of infant children. In the case of infants, the unauthorized absence from the legal custody has been treated, at least for the purpose of allowing the writ to issue, as equivalent to imprisonment, and the duty of returning to such custody as equivalent to a wish to be free. Therefore proceedings in habeas corpus have been so frequently resorted to, to determine the right of the possession of a minor that the question of physical restraint need be given little or no consideration where a lawful right is asserted to retain possession of the child. 12 R. C. L. 1214, § 33.

■ The equitable jurisdiction over the persons of infants is based upon parental duty and is an indirect means of enforcing it by furnishing a remedy for its violation. The jurisdiction is a delicate one. It rests in the highest degree upon the enlightened discretion of the court, and will only be exercised when plainly demanded as the means of securing the infant's present and future well-being. It is stated in 3 Pomeroy, Eq. Juris. § 1307, in substance, that it is the settled rule that a court of equity may interfere on behalf of infants and remove them from the custody and control of their father and mother whenever the habits, practices, instruction or example of the parents, exerting a personal influence on the infants, tend to corrupt their morals and undermine their principles; or when the parent is neglecting their education suitable for their condition in life, or endangering their property, or

is guilty of ill-treatment, or cruelty towards them. "The court will, of course, under like circumstances, remove infants from the custody of a legal or appointed guardian." See also *Ex parte Lee,* 220 N. Y. 532 (116 N. E. 352).

It is plain, therefore, that in considering this case it should be given practically the same consideration as though the legal guardian was the parent of the girls. In *Griffin v. Griffin,* 95 Or. 78 (187 P. 598) we find in the syllabus:

"1. A decree fixing the custody of a child is final when conditions existing at the time of its rendition remain the same, and should be modified only when conditions have changed, and then only for the child's best interests.

\*     \*     \*     \*     \*

"12. Where the custody of children was awarded to the wife in a divorce decree in California, and the children became domiciled with the mother in Oregon, in a *habeas corpus proceeding* by the father, it was incumbent upon him to show that conditions had so changed since the granting of the divorce decree as to warrant a change in custody."

In *Ex parte Bowers,* 78 Or. 390, 397 (153 P. 412), it was held:

"An alleged dependent infant, who has, pursuant to a duly verified written petition setting forth the necessary facts, been brought before a juvenile tribunal and found to be in need of a guardian, who is appointed, thereby becomes a ward of the court and is bound by its determination until the order has been set aside."

We are inclined to believe that in the exercise of this delicate jurisdiction, in order to interfere with or take away the custody of the minors from the duly appointed guardian, of their persons and estates, it

should be shown that the guardian has in some way forfeited his right to such custody and is either an unfit person to have such care and custody, or has exerted or is likely to exert an improper influence on the minors, which tends to corrupt their morals and undermine their principles, or that the guardian has neglected, or is likely to neglect, their suitable education, or to endanger their property. The testimony in the case does not indicate that the guardian has failed in respect to any of the conditions mentioned. Neither did the court find that he was not a suitable person to have the care and custody of the minors.

■■ The matter of the custody of an infant is subject to the control of the court, exercising its judicial discretion, but such judicial discretion is not arbitrary or unlimited. It is guided and governed by the rules of law. "The court can not refuse an application for the custody of a child by a person who has the legal right to the custody, if the applicant is a fit person." The controlling consideration in such matter is the best interest of the child. 31 C. J. 990, § 9.

■ The regular, orderly way to have presented the matter, in regard to these minors, would have been to have presented it in the county court of Polk county. The county courts of the state were created by the constitution and are courts of general original jurisdiction, with all the powers pertaining to probate matters. While under section 2, Art. VII of the constitution, the jurisdiction of county courts could be changed by law, it has never been. In *Adams v. Lewis*, 5 Sawy. 229, 1 Fed. Cas. 132, it is stated:

"In my judgment, the construction of this section, suggested by counsel for plaintiff, is correct; that is to say, the words, 'as may be provided by law,' do not

relate to the grant of jurisdiction pertaining to probate courts and board of county commissioners; that these are granted absolutely, * * *."

In *Morgan's Estate,* 46 Or. 233 (77 P. 608, 78 P. 1029), this court held:

"While sitting in the transaction of probate business, the nature and jurisdiction of a county court must be sought in the general nature and jurisdiction of probate courts as they are known in the history of the English law and the jurisprudence of this country." See *Richardson's Guardianship,* 39 Or. 246 (64 P. 390).

Independently of the constitutional powers of county courts, the legislature of this state has granted them power to assume custody of minors. Sections 11-1301 and 11-1302, Oregon Code 1930, give county courts power to appoint guardians for minors and those sections also provide that every guardian so appointed shall have the custody and tuition of the minor. The county court has the power to grant the custody of a minor to a guardian. It necessarily follows that it must have power to supervise that custody and make findings of fact regarding it. The defendants in the present case are hired keepers of the minors. Their control of the minors ordinarily would be guided and directed by the legal guardian.

It is clear from the testimony, as well as the findings of the court, that there is considerable disagreement between defendants and the other relatives of the minors, and in the condition they are now placed, all the indications are that their love and affection will be diverted from all of the other relatives. The uncles and other aunts naturally have an interest in the minors, at least equal to that of Mrs. Patterson, and it would not seem to be to the general welfare of

the girls that they should be estranged from their other relatives or should fail, upon proper occasions, to visit and enjoy their companionship and association.

It is urged that the minors are attached to Mr. and Mrs. Patterson, but before the children went to the Patterson home they exhibited a good deal of love and affection for Mr. and Mrs. Henkle. The condition of being practically estranged from their other relatives is not an encouraging one. In *Wilcox v. Wilcox*, 14 N. Y. 575, 578, where the question in regard to the care and custody of the minor children was between the mother and the grandfather, who for some time had had the custody of the infant, the court said:

"The fact that the child prefers her grandfather to her own mother and her own sister, is an argument for changing her home, that her affections may be restored to their natural channel, and that she may learn (by doing and receiving acts of kindness to and from those who are most nearly related to her) to love them most."

The testimony shows that before the children were put under the care of Mrs. Patterson by their guardian, Mrs. Patterson had not been with nor looked after the girls any more than had her brothers and sisters. About a year before Mrs. Patterson took the girls, their aunt, Mrs. Merrick, who lives in Tillamook, had cared for the girls about a year, and their relations were very happy. Before the girls went to Garibaldi they lived next door to plaintiff and his wife, Mrs. Florence Henkle, who cared for the children as much as she was able, and was loved by the children. The girls also were very friendly with their uncle, Mr. Roy Henkle, and his wife, Jessie, and used to go to Roy Henkle's

home almost every day. After Mrs. Patterson had kept the girls with her at Garibaldi for a while these friendly relations were changed. The girls were not permitted to visit Mrs. Merrick. Visits to plaintiff's home, which were desired at Christmas time, were restricted.

Plaintiff has been kind and thoughtful in his relations to defendants. Since the death of the grandmother of the minors, mother of plaintiff and Mrs. Patterson, there has been contention over small matters, such as old curtains, although it clearly appears that Mr. Henkle is a competent, careful business man and is paying strict attention to his duties as an administrator of the mother's estate and as guardian of the persons and estates of the minors.

It was proposed by the guardian, Mr. Henkle, to take the girls for a visit with their aunt in Bellingham, Wash., and, after a time, to send them to St. Helens Hall, one of the best schools in the state for girls, where they would receive a proper education and careful moral and religious instruction. In case they do not attend St. Helens Hall, Mr. C. W. Henkle and Mrs. Florence Henkle, whose health is much better than it was when the girls were sent to Garibaldi, are able and willing to take care of the girls. They would have a good, refined home with them. Before the children went to Garibaldi, Mrs. Henkle taught Nadine music. Under her care at St. Helens Hall the girls would receive a splendid social training.

Ordinarily the better arrangement would be for the care and custody of the minors to be controlled and directed by the same person who has charge of the estate of the minors. As it now appears, the temporary custody has been given to defendants, while the means

for their sustenance and management of their estate resides in their uncle, G. W. Henkle.

■ In the opinion in the case of *Turner v. Hendryx,* 86 Or. 590 (167 P. 1019, 169 P. 109), it plainly indicates that a proceeding in habeas corpus to determine the right to the custody of infants is equitable in its nature and the review on appeal is de novo, despite section 8-443, Oregon Code 1930, providing for appeal from the judgment of the circuit court or county court refusing to allow such writ or any final judgment therein "in like manner and with like effect as in an action".

■ The plaintiff, C. W. Henkle, is the regular appointed guardian of the persons and estates of Thia Nadine Thomas and Sylvia Ann Thomas, and is a fit and proper person to act as such guardian. He has in no way forfeited his right to do so.

The decree of the circuit court therefore must be reversed. It is so ordered. Let the writ issue.

No costs will be awarded to either party in this court.

CAMPBELL, C. J., RAND and BAILEY, JJ., concur.