PHIFER *v.* PHIFER.

4-5519                                      129 S. W. 2d 939

Opinion delivered June 12, 1939.

*J. Loyd Shouse* and *John H. Shouse,* for appellant.
*Virgil D. Willis,* for appellee.

MEHAFFY, J. Howard Phifer and Mary Phifer were married in 1931, and are the parents of one child, about six years old. The present suit involves the custody of this child.

In July, 1938, the parties separated and Howard Phifer brought suit for divorce alleging indignities that rendered his condition intolerable. The complaint in the divorce case shows that they are the parents of one child, Barbara, who at the time the divorce suit was filed was five years old. Mary Phifer did not contest the divorce suit, but signed a waiver of service and entry of appearance. She, at the time, had the child with her. There was nothing said about the custody of the child in the divorce suit, but Mary Phifer, the mother, testified that she did not contest the divorce because her husband Howard Phifer, told her that she could retain custody of the child and that he would support her and the child; that that was the reason she did not employ a lawyer, because she was most interested in retaining the custody of her child.

Howard Phifer testifies that he did not tell the mother of the child that she could have it all the time, but that he did tell her that while she had the custody of the child he would support her.

Shortly after the decree for divorce was granted, Howard Phifer returned to Louisiana, where he has been working for the past three years. He then wanted the child to visit with him, communicated with the mother, and she consented for the child to go to Louisiana on a visit. Howard Phifer testified that when he got the child and took her to Louisiana, he did not intend that she should return to her mother, but he did not tell the mother this. He admitted that if he had told her she would probably have refused to let the child go.

When the parties were first married, Mary Phifer was only seventeen years old. She wanted her husband to provide a home of their own, but instead of doing so he took her to his parents' home, where they resided most of the time until their separation.

After the father secured custody of the child, he and his mother came from Louisiana to Harrison, Arkansas, and both of them stayed at Phifer's sister's house in Harrison. They arrived at Harrison at night, and the next day Howard Phifer filed suit for the custody of the child. The suit was against Mary Phifer, mother of the child. Thereafter, on December 16, 1938, she filed answer and cross-complaint asking for the custody of their child and that the decree for divorce theretofore granted be canceled and set aside, and alleged that said decree was procured by fraud upon the court and against her.

Martha Phifer, the mother of Howard Phifer, filed inter-plea asking for the custody of the child, stating that she was its grandmother and it had nearly always lived with her; that she was a fit person and able to care for it, and that its father and mother were not fit persons to have its custody.

The chancellor entered a decree canceling the divorce decree and also held that, for the time being, the child should remain in the custody of its grandmother, and that the grandmother be required to execute a bond in the sum of $500 for the production of said infant in the court at Harrison on the second Monday in June, 1939, and upon the execution and filing of such bond, she be permitted to take said infant and keep her under the

orders of the court in her home in Louisiana until the second Monday in June, 1939. The court retained control of the infant and the cause of action, and further provided that the grandmother should return it to court for further orders of the court.

Howard Phifer did not file any answer to the interplea or intervention of Martha Phifer, his mother, although she alleged in her intervention that he was not a fit person to have the custody of his child.

Under the common law the primary right to the custody of the children was to the father. This rule, however, has been changed in many jurisdictions by statutes and by the decisions of courts.

Section 6203 of Pope's Digest makes the father and mother joint natural guardians, and § 6205 of Pope's Digest provides that where the parents are living apart, there may be an adjudication of the court as to the power, rights and duties with respect to persons and property of their unmarried, minor children, and in such cases there shall be no preference between the husband and wife, but the welfare of the child must be considered first.

There is no evidence that the mother is unfit to have the care and custody of the child. Howard Phifer, the husband, testified that she was extravagant, and he said that at times she treated the child all right, and at other times she did not try to treat her in any way but ugly. He does not attempt to say in what way she was extravagant or state any facts tending to show that she did not exercise good judgment.

Mary Phifer testified that when they lived together, the husband was receiving $75 per month; that she managed the expenses, paid the bills, and saved some money. This testimony is not disputed by anyone.

The grandmother testified that both father and mother were unfit to have the child because they were careless and went to parties and left the child with her. There is no substantial evidence in the record that tends to show that the mother is unfit to have the custody of the child.

The statements mentioned above are mere conclusions. Witnesses must testify to facts, and the court draws its conclusion from the facts testified to.

Prior to the adoption of the statute making the father and mother joint guardians of the child, this court said: "The father is the natural guardian of his child, and is *prima facie* entitled to its custody. This right of the father is not an absolute one, however, to be enforced under all circumstances; . . . 'When, therefore, the court is asked to lend its aid to put the infant in the custody of the father, and to withdraw it from other persons, it will look into all the circumstances and ascertain whether it will be for the real, permanent interest of the infant.' " *Andrews* v. *Andrews,* 117 Ark. 90, 173 S. W. 850.

"On appeal it is insisted that, as the father at common law is the natural guardian of his minor child, he is entitled to its sole care and custody, unless it is shown that he is incompetent or unfit for such duty. A number of our cases are cited in support of this contention, but this rule is not absolute and may be interpreted and enforced by the court placing the interest of the minor as of paramount importance." *Crawford* v. *Hopper,* 186 Ark. 1098, 57 S. W. 2d 1048.

It will, therefore, be seen this court held, even under the common law, that the right of the father was not absolute. While this was originally a suit between the father and mother of the child for its custody, it is here a contest between the mother and the grandmother. It is contended that the mother is not financially able to care for the child. The undisputed evidence shows that she went to school after the separation from her husband, and now has an opportunity to earn $75 a month; that her mother, if appellant wants her, will live with her, and her mother is receiving a pension from the railroad. Appellant's mother has two sons, 15 and 19 years of age.

On the other hand, the grandmother claims and testifies that she and her husband own a farm in Boone county; they do not testify anything about the amount of rent they receive from it, and do not testify anything

about its value; they do say that more than three years ago they left this home, moved to Louisiana, and there the husband is receiving $100 a month. They have no property in Louisiana and the evidence does not show how much rent they pay. The evidence shows that it is uncertain when they will return to Boone county, if ever, and there is no evidence tending to show the value of the property owned by the grandmother and grandfather. The child is going to school in Louisiana, but the school is 14 miles from where they live, and the little six year old child must go on the bus. She is making good progress in school; but the undisputed evidence shows that her mother, the appellant, taught her to read and write before she ever attended kindergarten.

There is no doubt but that both the grandmother and mother are attached to the child, and it has affection for them. That is not unusual.

"The law recognizes the preferential rights of parents to their children over relatives and strangers, and where not detrimental to the welfare of the children, they are paramount, and will be respected, unless special circumstances demand that such rights be ignored." *Johnston* v. *Lowry*, 181 Ark. 284, 25 S. W. 2d 436; *Loewe* v. *Shook*, 171 Ark. 475, 284 S. W. 726; *Herbert* v. *Herbert*, 176 Ark. 858, 4 S. W. 2d 513.

"Courts are very reluctant to take from the natural parents the custody of their child, and will not do so unless the parents have manifested such indifference to its welfare as indicates a lack of intention to discharge the duties imposed by the laws of nature and of the state to their offspring suitable to their station in life." *Holmes* v. *Coleman*, 195 Ark. 196, 111 S. W. 2d 474.

This court, in speaking of the right of the parents to the custody of a child, and defining the principles and circumstances that might justify a court in giving the custody to someone other than the parent, said: "It is impossible to define them, further than to say that they should be of such urgency as to overcome all considerations based upon the natural affections and moral obligations of the father." *Verser* v. *Ford*, 37 Ark. 27.

It is one of the cardinal principles of nature and of law that as against strangers or relatives, the parent, however poor and humble, if able to support the child in his own style of life, and of good moral character, cannot, without the most shocking injustice, be deprived of the privilege by anyone whatever, however brilliant the advantage he may offer. It is not enough to consider the interest of the child alone. *Verser* v. *Ford, supra.*

Appellant entered her appearance and permitted Phifer to get a divorce because she understood that she was to have the custody of the child, and that was the principal thing she wanted. She not only testifies very positively that this promise was made, but Phifer himself testifies that he told her he would support the child while she had the custody of it, and did not at any time intimate that he intended to try to get the custody of the child. When he got permission of the mother to take the child on a visit to Louisiana, he admits that he left the impression that she would be back in a few days, and did not intimate to her that he intended to keep the child; but he says that at that time he had the intention of keeping the child. He did not intend to return it to its mother.

The chancellor evidently thought that since the child was in school in Louisiana, it would be to the best interest of the child to continue with the grandmother until the term of school was closed. We think, however, that under the evidence in this case, the custody of the child should have been awarded to the mother.

The chancellor, of course, has the right to retain control of the case and if there are changes in the conditions which make it necessary to do so, he may change the custody of the child.

The decree of the chancery court is reversed, and the cause remanded with directions to enter a decree awarding the custody of the child to its mother.