Argued March 6, 1962, reargued January 8, reversed and
remanded March 20, 1963

# PARMELE *v.* MATHEWS
379 P. 2d 868

*Thomas E. Brownhill,* Eugene, argued the cause for appellant. On the brief were Riddlesbarger, Pederson, Brownhill & Ingerson, Eugene.

*W. P. Mumford,* Eugene, argued the cause for respondent. On the brief were Thompson, Mumford & Woodrich, Eugene.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

REVERSED AND REMANDED.

## GOODWIN, J.

This is a child-custody contest that was tried as a guardianship matter. The appeal is from an order denying a petition to revoke letters of guardianship.

Ethel Jean Parmele is the natural mother of two teen-age boys. Their father is dead. The parents had been divorced. Each had had a turn at custody. The father had custody at the time of his death.

Mabel C. Mathews became acquainted with the boys during the lifetime of their father. Immediately upon the death of the father Mrs. Mathews assumed *de facto* custody of the two boys. She then filed a petition in the circuit court praying the appointment of herself as guardian of the persons and estates of the children. Both children joined in the petition of Mrs. Mathews. The petition was granted *ex parte*. No notice of this proceeding was given the natural mother. None was then required by ORS 126.135, as the children were over fourteen years of age and had consented to the guardianship. (ORS 126.135 was repealed January 1, 1962.)

Four days after Mrs. Mathews was thus appointed, Mrs. Parmele filed her petition, which was accompanied by a show-cause order seeking the removal of Mrs. Mathews as guardian. Mrs. Parmele thought it necessary to seek the substitution of herself in that office, and accordingly prayed for her own appointment. Throughout this litigation, Mrs. Parmele has contested only the guardianship of the persons, and

has disclaimed any interest in the estates of the children.

On the issues framed by the order to show cause, the contest was between a fit parent and a fit stranger. The trial court decided that the best interests of the children would be served by permitting the surrogate mother to continue as their guardian.

The appeal presents these questions:

Was the probate court, under the facts of this case, the proper forum in which to try the child-custody contest?

If not, may the parties, by waiving the irregularity, invoke the power of the circuit court in another of its capacities, i.e., its general equity jurisdiction, to grant relief in this case?

Finally, if the court had jurisdiction to act, and if the jurisdiction was properly invoked, did the court err when it denied the custody of the children to a fit parent and awarded custody to the guardian?

The parties themselves have not questioned the jurisdiction of the probate court to act as it did. Indeed, a recent reargument *in banc* was essentially a joint request for a decision upon the merits under a stipulation waiving all procedural irregularities. Unfortunately for the expeditious termination of this affair, however, we are not at liberty to arrive at what may be a desirable result simply because the parties want us to do so.

██ Jurisdiction to appoint guardians was vested in certain courts by ORS 126.105. The Lane County circuit court is such a court. ORS 3.130. The measure of the court's authority in the administration of statutory remedies is to be found in the statute creating the procedure. *Belmont v. Black et al,* 218 Or 514, 520, 346 P2d 367 (1959). To invoke the jurisdiction of the

court it is necessary to file a petition which will set forth the facts upon which the court can act. *Dean et al v. First Nat'l Bank et al,* 217 Or 340, 349, 341 P2d 512 (1959). Such averments may be statutory prerequisites to the exercise of jurisdiction, or they may be required by common-law rules. Thus, in *Wright and Jones v. Edwards,* 10 Or 298 (1882), it was held that a petition which failed to allege material facts essential to invoke the exercise of jurisdiction deprived the court of authority to act. See also *Mumper v. Matthes,* 186 Or 357, 377, 206 P2d 82 (1949); *State et al v. Young,* 180 Or 187, 193, 174 P2d 189 (1947).

■ In the case at bar, the jurisdictional facts which must exist before the court may exercise its power to appoint a personal guardian were: (1) that the proposed ward is a minor; (2) that he is a resident of the county; (3) that the proposed guardian is qualified; and (4) that the proposed ward needs the care of a guardian. ORS 126.120 (repealed Jan. 1, 1962). These elements must be alleged before any hearing can be held. Further, if any such element is not established, the court may not grant letters of guardianship. *Guardianship of Kentera,* 41 Cal2d 639, 262 P2d 317 (1953); and see *Estate of Ott,* 228 Wis 462, 466, 279 NW 618, 619 (1938).

■ Mrs. Mathews' petition did not allege a need for a guardianship of the persons. While the petition was thus defective as a petition for the appointment of a guardian for the persons of the two children, it did state grounds for the appointment of a guardian of their respective estates. Inasmuch as the guardian was appointed *ex parte,* the defect in the petition was never called to the court's attention. When the letters of guardianship were issued, therefore, the situation was analogous to a default judgment granting the

prayer of a complaint which had contained both a good cause of action and a defective one. In such cases, if the court has jurisdiction of the general class of litigation it has the power to enter the judgment. In the absence of a direct attack, such a judgment is no doubt final. See *Altman v. School District,* 35 Or 85, 56 P 291, 76 Am St Rep 468 (1899).

The court below obviously had jurisdiction to hear and decide guardianship matters. The guardianship of the estates was properly before the court. The petition to appoint a guardian of the persons was also before the court, improperly so because it was defective, but it was, nonetheless, pending in a court of competent jurisdiction. The appointment of the personal guardian, however, was subject to direct attack upon the motion of the natural mother. The petition for the removal of the guardian of the persons was such a direct attack. The fact that the natural mother's petition also contained a totally unnecessary prayer that she be appointed as substitute guardian does not vitiate her petition insofar as it asked the removal of the previously appointed guardian.

■ Nothing in the guardianship code authorizes, much less makes necessary, the appointment of a personal guardian when a living parent is fit, ready, willing, and able to take the custody of his child. A fit parent needs no court to authorize him to rear his own children. See *Volz et ux v. Abelsen,* 190 Or 319, 327, 224 P2d 213, 225 P2d 768 (1950); *Ellenburg v. Woodson,* 131 Or 440, 283 P 27 (1929); *Bryant v. Dukehart,* 106 Or 359, 369-370, 210 P 454 (1922). (Statutes declaratory of the common law also could have been cited in *Ellenburg v. Woodson* and in *Bryant v. Dukehart.* See § 11-1305, Oregon Code 1930, and § 1314, Oregon Laws (Olson) 1920.)

The appearance in court of the natural mother (against whom there had been no allegation of disability or unfitness) was analogous to a situation in which a person assumed to be dead appears in court and thereby puts an end to the probate of his estate. In such a case, since there is no factual basis for the probate proceedings, orders previously entered by mistake are null and void. They should be vacated whenever the true facts appear. *Estate of Ott,* 228 Wis 462, supra; *Melia v. Simmons and another,* 45 Wis 334 (1878).

In the case at bar, the court was originally called upon to act as a court administering the guardianship laws under the guardianship code. When it appeared to the court, as a matter of law, that the need for guardianship of the persons of the two children did not exist, because of the availability of a fit parent, the court should have vacated the order appointing Mrs. Mathews as guardian and dismissed the guardianship proceedings insofar as personal guardianship was concerned. Had it done so, most of the confusion which has followed would have been avoided.

If it later became necessary to obtain a decision concerning the best interests of the children as that issue might bear upon the ultimate right of rival parties to physical custody, other procedures would be open to them at such time as jurisdictional facts would be alleged and proven in an appropriate case, and upon proper pleadings. See, e.g., *Ettin v. Robinson et ux,* 221 Or 193, 349 P2d 1097 (1960) (*habeas corpus*), and ORS 419.476, which provides for children found in circumstances which bring them within the jurisdiction of the juvenile court. The issues actually tried in the case at bar were not, however, issues that can be tried in guardianship proceedings.

The guardianship court was not the proper forum in which to try the equitable issue concerning the best interests of the two children, because that issue was not before the court so long as the court was considering the natural mother's petition to set aside the *ex parte* letters of guardianship. Upon the pleadings before it, the guardianship court had jurisdiction either to continue or to revoke the appointment of Mrs. Mathews. The court exercised its jurisdiction erroneously. The court had, obviously, jurisdiction to err, but having erred (in not granting the mother's request to vacate its former order), the court did not by its own error acquire jurisdiction to consider other matters which it might have considered as a circuit court if the mother had petitioned for a writ of *habeas corpus* challenging the custody in a stranger.

There is language in such cases as *In re Going's Estate,* 183 Or 346, 353, 193 P2d 529 (1948), and *In re Pittock's Estate,* 102 Or 47, 201 P 428 (1921), to the effect that a circuit court can proceed to decide legal and equitable questions which arise in connection with pending probate matters. These cases do not, however, authorize a court, merely because as a circuit court it could have jurisdiction of a particular subject, to assume jurisdiction of, and then proceed to decide, cases that are not properly before it.

As noted, the relative fitness of the two rivals was not before the court, because the first guardian's only standing to dispute the natural mother's right to custody would have evaporated as a matter of law if the trial court had ruled correctly upon the natural mother's petition to revoke the letters of guardianship. Had the court ruled correctly, the condition of these proceedings would have been as follows: The natural mother would have been entitled to a court order va-

cating the personal guardianship. The custody of the children, presumptively, would not then have required further litigation. As noted, a natural parent ordinarily does not need a court order before he can assert his parental right to custody.

In fairness to the learned trial court, it should be noted that the presumptive right of the natural mother to the immediate control of her children in the case at bar may indeed have been presumptive only. It is to be remembered that this unhappy case had its foundation in an antecedent divorce. It is suggested in the record that the children would have defied their mother. They said they preferred to remain in the *de facto* custody of their erstwhile guardian. Such a factual situation, if it should arise and were pleaded, might be cause for the issuance of a writ of *habeas corpus*. There was no need for an anticipatory writ, however.

■ The fact that the parties and the court below apparently treated this litigation as a continuation of the original divorce case between the natural parents of the children, as is shown by the authorities cited in the briefs, does not justify our approval of such an oversimplification. The instant case is not a continuation of the divorce case. It is a contest between a natural parent and a third party who is, in the eyes of the law, a stranger to the children. Under such circumstances, a body of substantive law quite different from that of divorce-custody litigation is called upon during the decision-making process.

Opinions written in divorce suits, where the only issue before the court was the welfare of children, are not necessarily relevant authority in a custody contest between a parent and a third party. The best interest of the child may indeed be a relevant factor in the ulti-

mate decision, but this factor must be considered in a very different light when only one of the litigants comes into court with the natural rights of parenthood on his side of the case. See, for a discussion of the best-interest rationale in a slightly different context, *Simons et ux v. Smith,* 229 Or 277, 280-281, 366 P2d 875 (1961).

The case at bar illustrates the substantive errors into which counsel (and the trial court) may be led when proper attention is not given to procedural matters. In the case at bar, the court was led to decide issues that lay beyond the jurisdiction the court was originally called upon to exercise.

■ Part of the confusion surrounding the subject of jurisdiction in these cases is the result of the failure of litigants to recognize the dual operation of the principle of *coram non judice*. A judgment rendered in a court of competent jurisdiction upon a case which is not properly before the court is just as void as a judgment rendered upon a case before a court which has no jurisdiction to enter it. See *Spoors v. Coen,* 44 Ohio St 497, 9 NE 132 (1886).

■ We are asked to take advantage of general principles of equity in order to come to a decision on the merits in this case. To do so we must decide a question that was never properly before the trial court. Attractive as the procedural shortcut might appear to be, a decision on the ultimate merits between the two contesting women would accomplish nothing in this case except to make bad law. If we were to affirm an admittedly irregular decree of the trial court because it reached what may be a desirable result, we would be compounding the confusion that already exists in the statutory and case law concerning parent and child. If we were to reverse the case on the merits, we would

likewise be approving loose procedure. Further, the record suggests no guarantee that there would be realistic relief for the mother in any event. Some future court may tell the children where to live, if that becomes necessary, but courts cannot make grown boys love their mother if they choose not to. Whatever the future may hold, however, this court should not be on record approving a void guardianship.

The cause is reversed and remanded with instructions to vacate the order appointing a guardian of the persons of the children, without prejudice to the continuation of the guardianship of their estates, if appropriate. Neither party is to recover costs in this court.

Reversed and remanded.

O'CONNELL, J., dissenting.

Both parties have waived all procedural defects in the present case and have urged us to decide whether Mrs. Parmele is entitled to the custody of her two sons. The majority opinion refuses to decide the issue presented. The ground for its refusal is that the circuit court of Lane county did not have jurisdiction to decide the issue presented and that the parties could not waive a jurisdictional defect.

I have very great difficulty following the reasoning in the majority opinion. Consequently, it is quite possible that I have not correctly interpreted it. It first appears to say that the circuit court never obtained jurisdiction to appoint a guardian of the *person* (as distinguished from a guardian of the estate) of the two children because the petition failed to allege facts sufficient to give the court jurisdiction. The reasoning seems to run as follows: (1) To invoke the jurisdiction of a court the petition must set forth the facts upon which the court is empowered to act. (2) One of the

facts necessary to be recited is that "the proposed ward needs the care of a guardian." (3) This fact was not alleged in Mrs. Mathews' petition for the appointment of a guardian and therefore the court did not acquire jurisdiction to appoint her as guardian of the person of the Parmele children. Since Mrs. Mathews was not legally appointed guardian of the person of the children, she has no right to their custody and her lack of capacity as guardian can be adjudicated by making a direct attack on the judgment.

Is a court's jurisdiction dependent upon the recitation in a petition or complaint of all of the facts necessary to state a cause of action or basis for relief? It is generally held that a court's jurisdiction is invoked if the pleading shows that the case belongs to a *general class* of cases with which the court has the power to deal. The principle is well stated in *St. Louis I.M. & S. Ry. Co. v. State,* 55 Ark 200, 205, 17 SW 806 (1891):

> "* * * And where the court has general cognizance over the class of cases to which that to be adjudged belongs, it has jurisdiction of the particular case upon a colorable presentation of the facts necessary to constitute it a member of the class."

The statement in the majority opinion that "To invoke jurisdiction of that [Lane County Circuit Court] court it is necessary to file a petition which will set forth the facts upon which the court can act" is, at best, misleading. It seems clear that the majority opinion regards the recitation of all of the essential facts as necessary to invoke jurisdiction. I admit that support for this conclusion can be found in some cases, including our own.[1] But it is my opinion that these

---

[1] See, e.g., Dean v. First Nat'l. Bank, 217 Or 340, 349–350, 341 P2d 512 (1959); McDonough v. Southern Or. Mining Co., 177 Or

cases are not carefully reasoned and cannot be supported. This is true whether the rule is applied to courts of general jurisdiction or to courts of special or limited jurisdiction.[2]

The criticism of the view expressed in the majority opinion and in the other Oregon cases cited above is adequately made elsewhere and I shall not attempt to restate it here.[3] I have commented upon the point simply because I feel that we should not perpetuate erroneous notions of "jurisdiction" and because I am hopeful that my criticism at this stage may lay the foundation for eliminating the error at some future date.

My reason for dissenting rests upon another ground. The majority seems to say that the decree of the Lane county circuit court appointing Mrs. Mathews guardian of the persons of the Parmele children was valid until it was declared invalid upon direct attack by Mrs. Parmele. The opinion indicates that the decree is subject to attack on jurisdictional grounds only if the court appointed a guardian at a time when there was a fit parent ready, willing, and able to take the custody of his children. I gather this from the part of the opinion which reads: "Nothing in the guardian-

136, 155, 159 P2d 829, 161 P2d 786, 164 ALR 788 (1945); Dippold v. Cathlamet Timber Co., 98 Or 183, 193 P 909 (1920) (extensive collection of cases from the various jurisdictions is found at 98 Or 189-90); cases in 36 Yale L J 553, 555, n. 9 (1927). It is interesting to note that we just recently decided that the failure of an indictment or information to state the facts necessary to allege a crime does not constitute a jurisdictional defect.

[2] See for example, Fox et ux v. Lasley, 212 Or 80, 318 P2d 933 (1957); Anderson, Adm. v. Clough et al., 191 Or 292, 230 P2d 204 (1951).

[3] An excellent discussion of the question is found in LRA 1916E, 316-326, Annotation: Collateral attack upon judgment because of insufficiency of pleadings.

ship code authorizes, much less makes necessary, the appointment of a personal guardian when a living parent is fit, ready, willing, and able to take custody of his child," and which continues, "A fit parent needs no court to authorize him to rear his own children." This would appear to say that the court has jurisdiction to appoint a guardian if the parent is not fit. Thus, in the present case, the decree would not be subject to attack on jurisdictional grounds if Mrs. Parmele was an unfit mother at the time Mrs. Mathews petitioned for her appointment as guardian. But if the validity of the decree rests upon the resolution of the question of fact of fitness, how was that question resolved in the present case? I am not sure. It seems to say that jurisdiction disappeared when the mother appeared. Thus, the mere fact of the mother's appearance in the proceeding was enough to resolve the question of fitness. The reasoning supporting this apparently is that the mother is to be deemed fit because there was "no allegation of disability or unfitness" made in Mrs. Mathews' petition for the appointment of a guardian. Consequently, the majority opinion says, the case "was analagous to a situation in which a person assumed to be dead appears in court and thereby puts an end to the probate of his estate." This is so because "there being no factual basis for the probate proceedings, everything undertaken to that end is null and void." In the first place I think it is erroneous to say that a probate court loses jurisdiction when it is shown that the person whose estate is being probated is living. The termination of a proceeding under such circumstances is simply the resolution of a decisive issue in the case warranting the entry of a judgment or decree by a court which has the jurisdiction to do so. But a more important criticism is that the

analogy does not support the majority's reasoning. In the probate example there is no issue of fact in need of resolution when the "decedent" makes his appearance. Not so with the parent who attacks a guardianship proceeding. She may be fit or unfit. If she proposes to attack the decree, it would be her burden to show that the decree was entered erroneously on the ground that she was a fit parent at the time the guardian was appointed. She does not carry this burden simply by making an appearance in the proceeding.

The issue of Mrs. Parmele's fitness was raised in this case by her petition for the removal of Mrs. Mathews as guardian and the latter's answer to that petition denying the allegations of fitness therein. The majority never reaches the question of whether Mrs. Parmele's petition invoked the jurisdiction of the court. If it did, then of course, the parties could waive all procedural defects which they attempted to do and which the majority says cannot be done.

It is my opinion that we must decide whether Mrs. Parmele's petition in this case invoked the jurisdiction of the circuit court. It will be noted that she filed her petition for the removal of Mrs. Mathews as guardian in the guardianship proceeding already instituted. Did that invoke the jurisdiction of the court? I shall assume, as the majority does, that the guardianship statutes do not invest the court with the power to adjudicate the question of a parent's right to his minor child if the parent is available, willing, and capable of having custody of his child. Consequently, if this question had been presented to a *county court* it would have no jurisdiction to decide it. But in the present case the question was presented to the circuit court. The issue would be litigable in the circuit court. The litigation would ordinarily be initiated through a peti-

tion for a writ of habeas corpus.[4] The problem of jurisdiction becomes more complicated where the judicial jurisdiction of the county court has been transferred to the circuit court, as it has been in Lane county. Where such a transfer is made the jurisdiction to decide guardianship matters is vested in the same court which has jurisdiction to decide questions of parental fitness. Issues of parental fitness are normally presented in habeas corpus proceedings, as I have just noted. Is it necessary that these two aspects of the same court's jurisdiction be kept separate to the extent that the institution of a proceeding invoking one aspect of its jurisdiction precludes the exercise in that proceeding of the court's power in the other aspect of its jurisdiction?

The petition which Mrs. Parmele filed in the guardianship proceedings in the present case asserted in substance the right to obtain custody of her children. Therefore, it presented a question of her fitness to have such custody, a matter which we have assumed is not within the guardianship aspect of the court's jurisdiction. Thus the question is whether Mrs. Parmele's petition brought this case within that aspect of the circuit court's general jurisdiction under which it has the power to adjudicate the question of parental fitness.

It seems inappropriate to say that the court lacks jurisdiction over the subject matter simply because Mrs. Parmele petitioned for the appointment of herself as guardian instead of petitioning for a writ of habeas corpus in view of the multiple aspects of the court's jurisdiction. The real question in cases of this

[4] See, e.g., Bartlett v. Bartlett, 175 Or 215, 152 P2d 402 (1944); Turner v. Hendryx, 86 Or 590, 167 P 1019, 169 P 109 (1917); Ex parte Barnes, 54 Or 548, 104 P 296, 25 LRA (NS) 172 (1909).

type is not whether the court has jurisdiction, but whether, as a matter of sound procedure, it is desirable in a particular proceeding to permit a party to raise issues which are not germane to that proceeding or which cannot conveniently be treated as a part of that proceeding. *Arnold et al. v. Arnold,* 193 Or 490, 237 P2d 963, 239 P2d 595 (1952) illustrates the confusion which may arise where the traditional method of raising an issue is disregarded. In that case the administrators of an estate in the process of administration commenced a proceeding in the probate department of the Multnomah county circuit court by filing a petition which prayed for certain relief. The character of the petition was described by the Supreme Court as follows:

"* * * The petition, as counsel for the petitioners says, states a cause of action in ejectment, which is a proceeding at law. But it is mixed up with a cause of action in replevin and what purports to be a suit for an accounting and a demand for a list of tenants of the hotel and 'all other information concerning the operation and management of the Hazel Hotel' * * *." 193 Or at 505, 237 P2d at 970.

The court held that the probate department did not have jurisdiction to try the cause of action in ejectment and, therefore, the parties could not waive the procedural irregularities by stipulation.[9] I would say

⑨ Some doubt is cast on the holding of the Arnold case by McColloch v. U. S. National Bank, 207 Or 508, 511, 297 P2d 1076 (1956). In that case this court said:

"As clearly appears from an examination of these statutes, there is only one Circuit Court for Multnomah County, and each of the judges thereof, regardless of the department to which he is assigned, is vested with the entire jurisdiction of that court, though for convenience in administration one of them is especially charged with probate duties."

But see the discussion of these two cases in Fox v. Lasley, 212 Or 80, 87, 318 P2d 933 (1957).

that the circuit court sitting in probate has jurisdiction to decide questions of title, but that in the interest of orderly procedure (as it was in the Arnold case) the parties may be required to litigate that question in a separate proceeding with the usual forms of pleadings and in accordance with traditional procedure. Whether the matter should be separately litigated in a particular case will depend upon the facts of that case. The ultimate decision as to whether the issue raised should be litigated separately will ordinarily rest in the discretion of the court. The court may, upon proper motion by a party or upon its own motion, refuse to consider the issue tendered. This is, in effect, the conclusion reached in *In re Going's Estate,* 183 Or 346, 193 P2d 529 (1948). In that case the question was whether a widower could enforce his right of curtesy in a probate proceeding. The court said:

"* * * We think it was within the power and jurisdiction of the circuit court judge of the probate department to permit an amendment to the title of the petition and a further amendment to conform to the stipulated facts so as to show that the decedent did not die seized of the property and the court might then proceed to try the case as an action of law for the recovery of property under O.C.L.A., § 8-215, or it might transfer the cause to another judge of the circuit court for such trial. Our conclusion is that the circuit court was right in refusing to try the case as a probate matter but erred in dismissing the case for want of jurisdiction. The case should be remanded to the circuit court with leave to amend, and in the event that the petitioner by amendment shows a cause of action in ejectment, the cause should be tried as such." 183 Or at 352-353, 193 P2d at 531-532.

Approaching the present case on the foregoing basis, the question is whether the issue of parental

right to custody of a minor child is properly shaped up by a petition and answer, or whether that issue should be framed as issues are usually framed, i.e., by pleadings in the form ordinarily used to define the issue.

Both the court and counsel in the instant case proceeded upon the assumption that the issue of parental right was properly raised. The record discloses that Mrs. Parmele rejected the remedy of habeas corpus as a method of attacking the order appointing Mrs. Mathews as guardian and elected instead to directly attack the order in the guardianship proceedings.[®] The case then proceeded in precisely the same way as it would have if the proceeding had been initiated by way of a petition for a writ of habeas corpus. It would have been proper for the trial court to require the mother in this case to initiate a separate habeas corpus proceeding. Nevertheless, no error was committed in trying the case as if it were a part of the guardianship proceedings and the irregularity in so proceeding should be regarded as waived.

I turn then to the only question raised on appeal: Was there sufficient evidence to support the decree depriving Mrs. Parmele of the custody of her children?

There is no evidence to show that Mrs. Parmele is not a person morally fit to have custody of her children. Nor is there evidence of her mental incompetency or inability to provide for the children. There

---

[®] This choice was made because plaintiff's counsel regarded In re Henkle, 153 Or 337, 56 P2d 343 (1936) as a pronouncement of this court's preference for direct rather than collateral attack upon the order sought to be set aside. But cf., Quinn v. Hanks, 192 Or 254, 233 P2d 767 (1951). In the Henkle case the parents of the child were dead and the question of the suitability of the guardian was properly a part of the guardianship proceedings.

is no evidence of abandonment. There is evidence that the house to which the mother seeks to bring the children is under construction and as a consequence has certain shortcomings. As one witness testified, it was "all torn up, they was building on it, fixing it up." The house was described as "crowded," without adequate heating facilities (apparently due to the remodeling project), and in general as being "not very good." It would appear that by comparison Mrs. Mathews' home would provide superior shelter.

The children in question emphatically express their preference for Mrs. Mathews as their guardian. As one of them put it, he preferred her because "she has given me more love, and she don't scream at me all the time, and she takes part in my schooling, and she takes us places." Both children testified that they loved Mrs. Mathews. It seems evident that they do not love their mother. When they lived with their mother they ran away from home on several occasions. They had cause for dissatisfaction with their home life during that period. Mrs. Parmele and her husband frequently quarreled, often screamed at each other, and occasionally engaged in acts of physical violence. As Gerald Lyons testified, "it was just an awful mess, and it would terrify us seeing them throw things back and forth. And they would break lamps and that. And then they would break up a lot of times over there, and she would get mad at him and throw his clothes into the fireplace. And they would burn up." These forays prompted Mrs. Parmele's husband to leave on several occasions but he always returned.

There was some evidence that the boys were physically maltreated. Gerald Lyons testified that his mother "dunked" him head first into a tub of water

to punish him. On another occasion she kicked her son Harold "in the seat" causing a bruise.

The foregoing evidence adequately portrays the setting in which these children will be forced to live if Mrs. Parmele is entitled to their custody. By contrast Mrs. Mathews' home would appear to provide a more peaceful and stable environment.

The choice would clearly favor the latter's custodianship if we were permitted to consider only the best interest of the child in these contests between the parent and a third person. The boys' chance for happiness and spiritual fulfillment would appear to be greater if they were permitted to remain in the home of Mrs. Mathews. But the best interest of the child is not the sole test for allocating custody in this class of cases. The interest of the parent must also be considered. A fit parent has the right to the custody of his minor children unless there are compelling reasons for depriving him of that custody. The parental right is not absolute. Under some circumstances it may be necessary in the interest of the child's welfare to deprive a fit parent of his custodial right. It is possible that in some circumstances the uprooting of a child from his surroundings would be so inimical to his well-being that the parental claim to custody would have to be denied.[7] It is not necessary for this court to now state more specifically what those circumstances must be; it is necessary only to explain why the circumstances in the present case do not warrant the application of the exception to the rule. Here it may be assumed that the children love Mrs. Mathews and not their mother; that they will be unhappy if forced to live with their mother; and that it would be to their

[7] See Langenberg v. Steen, 213 Or 150, 322 P2d 1087 (1958).

best interest, spiritually, emotionally, and economically to remain with Mrs. Mathews. However, these are not grounds for depriving a fit parent of the custody of his child. Although children are in many respects regarded as the special wards of the state, our law has not yet reached the point where the state will acknowledge a parent-substitute simply because the child has lost his affection for his parent. Nor has it guaranteed children that they will be free from family quarrels, even when they are carried on with frequency and are accompanied by physical violence as in the present case. When the circumstances become sufficiently aggravated there may be the basis for the appointment of a guardian under the juvenile code[8] or by a petition for habeas corpus. But that is not shown to be the situation in the present case.

The physical surroundings in the mother's home are far from ideal and it appears that they are inferior to those which Mrs. Mathews' home would provide. However, a parent will not be deprived of the custody of his child merely because the child's standard of living would be higher under another person's care.[9]

Thus it may be seen that the adverse effects on the interest of the children spiritually, emotionally and economically do not outweigh the parent's right in this case. Little help is found in the cases from other jurisdictions. Those cases are in conflict. The conflict results from a choice of competing social interests; one emphasizing the parental interest and the importance

[8] See for example ORS 419.476.

[9] See e.g., Phifer v. Phifer, 198 Ark 567, 129 SW2d 939 (1939); People ex rel Portnoy v. Strasser, 303 NY 539, 104 NE2d 895 (1952). Cf., In re Guardianship of Baldwin, 130 Or 206, 278 P 1078 (1929); McKay v. McKay, 77 Or 14, 149 P 1032 (1915).

of the family unity;[20] the other emphasizing the child's individuality apart from his blood relationship to his parent and regarding the child's best interest as the more important factor.[21] Each of these interests must be put in the balance. The parental interest should not be disregarded merely to serve the best interest of the child.[22]

The majority refused to deal with this important issue—the only issue presented to us on appeal. If Mrs. Parmele had not included in the heading of her petition the words "In the Matter of the Guardianship of * * *" and had eliminated the file designation "Guardianship No. 14951," her petition would have been sufficient to initiate a proceeding in habeas corpus and the court would have had jurisdiction. Thus the case is made to turn on a requirement which is purely technical in nature. This is the kind of empty formalism which brings the law into disrepute.

The apologia at the end of the majority opinion stating that we would "make bad law" and that "we would be compounding the confusion that already exists in the statutory and case law concerning parent and child" are generalities which do not carry conviction. This case can be disposed of expeditiously and

[20] Walker v. Gehring, 172 Neb 398, 109 NW2d 724 (1961); People ex rel Kropp v. Shepsky, 305 NY 465, 113 NE2d 801 (1953); Skeadas v. Sklaroff, 84 RI 206, 122 A2d 444 (1956), cert. denied 351 US 988, 76 S Ct 1051, 100 L Ed 1501 (1956); Walker v. Brooks, 203 Va 417, 124 SE2d 195 (1962).

[21] Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 158 NE2d 613 (1959); Thein v. Squires, 250 Iowa 1149, 97 NW2d 156 (1959); McCormick v. Lewis, 328 SW2d 415 (Ky 1959); In re Adoption of a Minor, —— Mass ——, 178 NE2d 264 (1961).

[22] Ellenburg v. Woodson, 131 Or 440, 283 P 27 (1929). The question presented in the Ellenburg case and in the case at bar is to be distinguished from the case where the contest is between competing parents. In the latter case the best interest of the child is the sole criterion in determining the right to custody.

by the application of the principles stated in this dissenting opinion, none of which would make "bad law" nor create confusion.

The decree of the lower court should be reversed and the cause remanded with directions to enter a decree for Mrs. Parmele.

SLOAN and DENECKE, JJ., join in this dissent.